UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| TODD GUDEAHN<br>    Plaintiff, | : CIVIL ACTION NO:<br>: |
| vs. | : JURY TRIAL DEMANDED |
| THE GRANITE GROUP WHOLESALERS LLC<br>    Defendant. | :<br>: JUNE 20, 2013 |

## COMPLAINT

### I.   PRELIMINARY STATEMENT

1.  This is an action brought by the Plaintiff, Todd Gudhean, against the Defendant, The Granite Group Wholesalers, LLC d/b/a The Granite Group (hereinafter, "The Granite Group "). The Plaintiff alleges violations of the overtime wage provisions of the Federal Fair Labor Standards Act, 29 U.S.C. §201, *et seq.*, as well as Conn.Gen.Stat. §31-58 *et seq.*  The Plaintiff seeks unpaid overtime wages, liquidated damages pursuant to the FLSA and double damages pursuant to Connecticut law, and his reasonable attorney's fees and costs.

2.  Plaintiff further alleges that he was wrongfully terminated and otherwise retaliated against for seeking and accepting medical benefits and reimbursements under Defendant's Health Reimbursement Account in violation

of the Employee Retirement Income Security Act of 1974, 29 U.S.C. §1001, *et seq.* ("ERISA").

3. Plaintiff further alleges that he was wrongfully terminated, in violation of the public policy of the State of Connecticut, in that he was terminated for helping to identify the perpetrator of a workplace theft, which resulted in the termination of the Branch Manager's nephew. Plaintiff offered his suggestions in response to and in reliance upon Defendant's Problem Resolution Policy and, as such, brings claims of Promissory Estoppel and Negligent Misrepresentation.

## II. **JURISDICTION AND VENUE**

4. This Court has jurisdiction pursuant to the FLSA, 28 U.S.C. §1331, as well as ERISA, 29 U.S.C. §1001, *et seq.* With respect to the state law claims, this Court has supplemental or pendant jurisdiction pursuant to 28 U.S.C. §1367 in that the state law claims are so related to the federal claims that they form part of the same case or controversy under Article III of the United States Constitution.

5. Venue is proper in the District of Connecticut under 28 U.S.C. § 1391(b). Plaintiff was employed by Defendant in Connecticut, and the acts and omissions complained of were committed primarily or exclusively within the jurisdiction of the United States District Court for the District of Connecticut.

## III. **PARTIES**

6. Defendant, The Granite Group, is a New Hampshire Limited Liability Company doing business at several locations in the state of Connecticut,

2

including New London, Connecticut where Plaintiff was employed. The Granite Group is headquartered at      6 Storrs Street in Concord, New Hampshire. Defendant has approximately 340 employees, with approximately 65 employees working in Connecticut.

7.     Defendant is an employer as that term is defined by the Federal Fair Labor Standards Act, 29 U.S.C. §203(d), and by Connecticut General Statutes §31-58(e) and 31-71a(1).

8.     Plaintiff, Todd Gudhean, resides in Griswold, Connecticut. At all times relevant to this Complaint, Plaintiff was an employee of Defendant as that term is defined by the Federal Fair Labor Standards Act, 29 U.S.C. §203(e)(1); and by Connecticut General Statutes §31-58(f) and 31-71a(2).

9.     At all times relevant to this Complaint, the Plaintiff was an employee engaged in commerce, and/or was an employee in an enterprise engaged in commerce within the meaning of 29 U.S.C. §206(a) and 207(a)(1).

## IV.    STATEMENT OF FACTS

10.    Plaintiff was employed by the Defendant, or its predecessor, from March 13, 2001 to September 13, 2012. Plaintiff was originally hired and went to work for Shetucket Plumbing Supply Company (hereinafter, "Shetucket Plumbing "). Shetucket Plumbing was acquired by The Granite Group and Plaintiff became their employee on March 26, 2007.

11. Plaintiff was employed as a warehouse person/driver. His duties included processing receivables, store-to-store transfers, picking and delivering tickets, unloading trucks, delivering boilers and other parts, and various other related duties.

12. Plaintiff worked at the store located at 75 Jefferson Avenue in New London, CT.

13. Approximately two and a half years ago, Jim Sheehan became the new Branch Manager of the New London location, and Plaintiff's direct Supervisor.

14. Jim Sheehan has been with Shetucket Plumbing and/or The Granite Group for more than 30 years.

15. On or about May 16, 2011, Jim Sheehan hired his nephew for a sales position although he was clearly not qualified, having no sales background and no knowledge of the Company's products.

16. Following his hire, three hundred dollars or so went missing from the store over a weekend.

17. Jim Sheehan said there was no way to tell who took the money or what happened.

18. Plaintiff suggested to Jim Sheehan that he check the security codes to see if anyone entered the store over the weekend. Jim Sheehan reluctantly agreed to do so. The only person who signed in over the weekend was his nephew.

19. As a result, Jim Sheehan was forced to terminate his nephew's employment.

20. Plaintiff felt he was obligated to offer whatever assistance he could to remedy a theft or identify the culprit as both an employee and a citizen.

21. Plaintiff felt he was justified in offering his suggestions under the "Problem Resolution" section of the Defendant's Employee handbook, which tells employees, "if you encounter a situation or issue at The Granite Group which concerns you . . . you should feel free to offer the manager your suggestions for resolution of the issue."

22. Plaintiff was treated negatively by Jim Sheehan following the termination of Sheehan's nephew.

23. Defendant maintained a medical insurance plan that included a health reimbursement account (HRA Plan).

24. Under the HRA Plan, an employee's family could be reimbursed by the employer up to $2,000.00 per year for medical expenses in excess of the annual family deductible amount ($2,000). If not reimbursed to an employee, the funds would revert to the employer.

25. The Granite Group is the Plan Sponsor and the Plan Administrator of the HRA Plan.

26. Plaintiff's daughter has chronic medical issues. Plaintiff himself suffered a number of illnesses and injuries, most related to his employment. As a result,

Plaintiff's family exceeded the family deductible amount in both 2011 and 2012, and Plaintiff put in claims for reimbursement under the HRA Plan.

27.     Prior to his termination, Plaintiff was diagnosed with a cyst. His doctor told him that it likely resulted from his employment. Plaintiff was also diagnosed with nasal polyps. He was taking medication for the polyps and was told by his doctor that if it didn't clear up it would require surgery. Plaintiff informed Jim Sheehan of these conditions.

28.     Shortly prior to his termination, Plaintiff contacted Defendant's human resources representative, Laurie Murphy, about seeking reimbursement under the HRA Plan.

29.     Laurie Murphy subsequently came to the New London store. In discussing the HRA Plan, she stated, "You can apply for reimbursement if you want, but realize that it is our money that is reimbursing you."

30.     Plaintiff felt as though he was being discouraged from making a claim for reimbursement under the plan.

31.     Other employees have avoided seeking medical treatment or making claims for fear of suffering adverse employment actions as a result.

32.     On Thursday, September 13, 2012, Plaintiff reported to work and was performing his normal duties when Jim Sheehan called him into his office.

33.     Sheehan said the store was "not doing too good, not making enough money, so you get the vacation." Sheehan told Plaintiff there was COBRA for

6

him and his family "for only $1,600 a month." Sheehan was laughing, smiling and smirking the entire time.

34.    Jim Sheehan then told Plaintiff he had "30 minutes to get your stuff and get out of here."

35.    Approximately a month later Defendant hired a new person for Plaintiff's position.

36.    That same position has been filled at least twice since Plaintiff was terminated. Plaintiff was not recalled or offered any position with the Company since his termination.

37.    In the past, when new positions became available the Company would recall employees who had been laid off earlier. In some cases the Company would offer a lesser position at a reduced salary.

38.    Upon information and belief, the individual they originally hired to replace Plaintiff had a prior DUI on his driving record. The Granite Group does a DMV check as part of its hiring process. In the past, potential employees with such a record were not hired.

39.    Plaintiff had a clean driving record, as verified periodically by The Granite Group.

40.    Plaintiff was discriminated against, retaliated against, and wrongfully terminated for seeking lawful reimbursement under the Defendant's HRA Plan and/or for attempting to help identify the culprit in a theft from the Defendant.

41. From the time of hire through approximately June 1, 2008, Plaintiff was treated as a non-exempt employee and paid at an hourly rate, including overtime for hours worked in excess of 40 per week.

42. Plaintiff's pay increased over time as a result of his hard work and good performance, from $8.50 per hour at the time of hire to $16.50 per hour at the time Shettucket Plumbing was acquired by The Granite Group on March 26, 2007.

43. In early to mid 2008, Plaintiff informed Defendant that he had received an offer of employment elsewhere and was considering leaving their employ. As a result, Defendant offered to increase Plaintiff's pay to $60,000.00 per year on an annual basis. Plaintiff accepted and the new compensation rate went into effect on June 1, 2008.

44. Plaintiff's duties and responsibilities remained the same following the June 1, 2008 increase. Plaintiff was not informed that he had been promoted or that there had been any change in his job title.

45. From June 1, 2008, through his last day of employment on September 13, 2012, Plaintiff was paid a fixed weekly amount, regardless of the number of hours he worked. Defendant did not pay the Plaintiff at the rate of one and one-half times his regular hourly rate for hours worked in excess of forty hours in each one week period.

46. The Defendants did not maintain a complete and accurate record of the hours worked and wages earned by the Plaintiff.

47. Between September 14, 2009 and September 13, 2010, Plaintiff worked approximately 60 hours per week.

48. Between September 14, 2010 and September 13, 2012, Plaintiff worked approximately 47.5 hours per week.

49. Plaintiff estimates that the Defendants failed to pay him approximately $76,440.00 in overtime wages over the course of the last three years of his employment.

50. Plaintiff obtained legal representation and on or about November 9, 2012 and caused a letter to be sent to the Defendant from the Law Office of Mangines & Burke, LLC. The letter requested that Plaintiff be paid for the overtime wages that he was owed or, in the alternative, that the employer explain why it felt that Plaintiff was an exempt employee not eligible for overtime pay. Defendant did not reply to the letter.

51. On or about January 2, 2013, Plaintiff filed a Statement of Claim for Wages with the Connecticut Department of Labor seeking recovery of the above referenced unpaid overtime.

52. On June 14, 2013, Plaintiff wrote to the Connecticut Department of Labor asking them to close their file and allow Plaintiff to withdraw his claim in order to

file the instant complaint. The Connecticut Department of Labor has closed its file.

## V.   COUNT ONE: UNPAID OVERTIME CLAIM UNDER THE FLSA

53. Defendant failed to keep track of Plaintiff's hours and pay him overtime as required by the FLSA and other federal wage and hour laws.

54. Defendant's failure to pay overtime wages as required by FLSA was willful, arbitrary, and/or in bad faith, inasmuch as the Defendant was aware of or reasonably should have been aware of its obligation to pay the Plaintiff consistent with the federal laws governing overtime and did not do so.

55. Defendant's failure to pay overtime wages has caused Plaintiff damages.

## VI.   COUNT TWO: CONN.GEN.STAT. §31-72 CLAIM FOR UNPAID WAGES

56. Defendant failed to keep track of Plaintiff's hours and pay him overtime as required by the state wage and hour laws, including all of the wages that were owed him as required under Conn.Gen.Stat. §31-71b through 31-71e.

57. Defendant's failure to pay overtime wages as required by Connecticut law, including C.G.S. §31-76c, was willful, arbitrary, and/or in bad faith, inasmuch as the Defendant was aware of or reasonably should have been aware of its obligation to pay the Plaintiff consistent with the Connecticut laws governing overtime and did not do so.

58.     The Plaintiff brings this action pursuant to Conn.Gen.Stat. §31-72, seeking payment of the wages that he is owed, as well as double damages and attorney's fees and costs.

### VII.    COUNT THREE: ERISA - RETALIATION

59.     Defendant terminated Plaintiff or otherwise retaliated against him for seeking medical care and benefits or reimbursements under the company's medical and HRA Plans in violation of ERISA.

60.     Defendant's conduct in terminating Plaintiff or otherwise retaliating against him for seeking medical care and benefits or reimbursements under the company's medical and HRA plans in violation of ERISA entitles Plaintiff to damages, including back pay, front pay, punitive damages and attorneys fees and costs.

### VIII.   COUNT FOUR: WRONGFUL TERMINATION IN VIOLATION OF PUBLIC POLICY

61.     Connecticut has a well recognized public policy against theft and larceny, and in protecting witnesses and others who come forward to prevent such crimes or identify the perpetrators of such crimes.

62.     Plaintiff was wrongfully terminated in violation of public policy in retaliation for coming forward in a reasonable, good faith manner to assist his employer in identifying who was responsible for monies that went missing, thereby leading to the termination of Jim Sheehan's nephew.

63.     Plaintiff is entitled to compensation for damages arising from his wrongful termination, including back pay, front pay, compensatory damages, punitive damages and attorney's fees and costs.

### IX.    COUNT FIVE: PROMISSORY ESTOPPEL

64.     Defendant continuously promised Plaintiff throughout the course of his employment that he would be treated in accordance with the Defendant's policies and procedures.

65.     Defendant's "Problem Resolution" policy contained in Defendant's Employee Handbook tells employees, "if you encounter a situation or issue at The Granite Group which concerns you . . . you should feel free to offer the manager your suggestions for resolution of the issue."

66.     Inherent in Defendant's Problem Resolution Policy is the promise that an employee will not be terminated or otherwise retaliated against for coming forward in a reasonable, good faith manner to offer a suggestion for resolution of an issue which concerns him, such as the theft of funds from the employer.

67.     Plaintiff relied on Defendant's promises to his detriment by coming forward and suggesting that Jim Sheehan check the log-in records to see who, if anyone, checked into the building over the weekend that the monies went missing.

68.     Defendant broke its promises to Plaintiff terminating him without cause in retaliation for offering a suggestion in good faith, not knowing that it would implicate Jim Sheehan's nephew and lead to his termination.

69.     Plaintiff has suffered damages as a result of Defendant broken promises, thereby entitling him to damages.

### IX.    COUNT SIX:  NEGLIGENT MISREPRESENTATION

70     Defendant continuously represented to Plaintiff throughout the course of his employment that he would be treated in accordance with the Defendant's policies and procedures.

71.     Defendant published a "Problem Resolution" policy in its Employee Handbook, which tells employees, "if you encounter a situation or issue at The Granite Group which concerns you . . . you should feel free to offer the manager your suggestions for resolution of the issue."

72.     Inherent in Defendant's Problem Resolution Policy is the representation that an employee will not be terminated or otherwise retaliated against for coming forward in a reasonable, good faith manner to offer a suggestion for resolution of an issue which concerns him, such as the theft of funds from the employer.

73.     Defendant negligently represented in its Problem Resolution Policy that Plaintiff "should feel free to offer the manager your suggestions for resolution of . . . a situation or issue at The Granite Group which concerns you."

74.     Plaintiff relied on Defendant's negligent misrepresentations to his detriment by coming forward and suggesting that Jim Sheehan check the log-in records to see who, if anyone, checked into the building over the weekend that the monies went missing.

75. Defendant acted contrary to its representations to Plaintiff by terminating him without cause in retaliation for offering a suggestion in good faith, not knowing that it would implicate Jim Sheehan's nephew and lead to his termination.

76. Plaintiff has suffered damages as a result of Defendant's negligent misrepresentations, thereby entitling him to damages.

## X. PRAYER FOR RELIEF

**WHEREFORE**, the Plaintiff respectfully requests that this Court:

1. Order the Defendants to pay to the Plaintiff all wages owed, consistent with the Fair Labor Standards Act and Connecticut overtime wage payment laws;

2. Award the Plaintiff liquidated damages for all overtime wages owed pursuant to 29 U.S.C. §216(b);

3. Award the Plaintiff double damages for all minimum wages and overtime wages owed pursuant to Conn.Gen.Stat. §31-72;

4. Order that Plaintiff be reinstated or, in the alternative, an award of front pay including the value of lost benefits;

5. Order an award of back pay including the value of lost benefits;

6. Order an award of compensatory damages including emotional distress;

7. Order an award of punitive damages;

8. Order an award of pre- and post-judgment interest;

9. Award Plaintiff his attorneys' fees and costs; and

10. Award the Plaintiff such other legal and equitable relief that the Court deems appropriate.

## XI. JURY DEMAND:

Plaintiff demands a jury trial as to all claims triable to a jury.

THE PLAINTIFF

BY _____
Francis D. Burke
MANGINES & BURKE, LLC
977 Farmington Ave, Ste 200
West Hartford, CT 06107
(860) 233-1000
(860) 523-9235 (fax)
fburke@aol.com
Fed. Bar No. ct18688